Kenneth L. Neeley, 025899
Geoffrey M Khotim, 019513
Karen G Bentley, 034148
Nicholas T Van Vleet, 026933
**NEELEY LAW**
1120 S. Dobson Rd., Ste. 230
Chandler, Arizona 85286
Tel: 480.802.4647 | Fax: 480.907.1648
ECF@neeleylaw.com
*Attorneys for Plaintiff(s)*

Joshua Bryan Lane, 24092665
Kyle Wayne Schumacher, 24106831
**SCHUMACHER LANE PLLC**
9433 Wildcat Ridge
Godley, Texas 76044
Tel: 210-541-2154
josh@shumacherlane.com
kyle@schumacherlane.com
*Co-Counsel for Plaintiff(s)*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| In Re: | **CASE NO.: 22-40639** |
| DIVINE N NYIAWUNG, | **CHAPTER 7** |
| Debtor. | |
| DIVINE N NYIAWUNG, | |
| *Plaintiff* | **Adversary Case No.: _____** |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, | |
| *Defendant(s).* | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF AN ALLEGED STUDENT LOAN DEBT PURSUANT TO 11 U.S.C. § § 523(a)(8)**

COMES NOW, Plaintiff, DIVINE N NYIAWUNG, by and through undersigned counsel, and complains of the Defendant, U.S. Department of Education. Plaintiff is seeking to Determine the Dischargeability of Student Loans which are held by the Defendant. Plaintiff respectfully alleges as follows in support of this Complaint:

## I. INTRODUCTION

On March 28, 2022, Plaintiff filed a voluntary petition (the "Petition") for no-asset bankruptcy relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. On May 3, 2022, the Plaintiff's duly noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Meeting of Creditors"). On July 7, 2022, the Court granted Plaintiff a discharge pursuant to the Order of Discharge (the "Discharge"). This is an adversary proceeding in which Plaintiff seeks a determination as to the dischargeability of the debt owed by the Plaintiff to the Defendant under Bankruptcy Code § 523(a)(8).

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding and for Injunctive and Declaratory relief pursuant to 28 U.S.C. § 1331, 1334 and 1337(a), 28 U.S.C. § 2201-2202, FRBP 4007, and 11 U.S.C. § 523. The Court has the authority to enter a final order regarding this contested matter because it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (E), (G), (I), (J), and (O). Pursuant to Sections 1408, 1409, and 1391(b) of Title 28 of the United States Code, venue is proper in this district/division.

## III. PARTIES

2. The Plaintiff is DIVINE N NYIAWUNG.

3. The Defendant is the U.S. DEPARTMENT OF EDUCATION ("US DOE" or "Defendant"). The U.S. Department of Education is a branch of the federal government which serves as a provider of a variety of loans to undergraduate and graduate students. The Defendant holds, guarantees, or services student loan debt incurred by the Plaintiff. The U.S. Department of Education may be served by serving the U.S. Secretary of Education, Miguel Cardona, at 400 Maryland Ave. SW, Washington DC 20202, Attorney General Merrick B. Garland at U.S. Department of Justice, 950 Pennsylvania Ave NW, Washington DC, Acting U.S. Attorney Chad Meacham at 1100 Commerce Street, Suite 300, Dallas, TX 75242, and Assistant U.S. Attorney

NEELEY LAW

– Fort Worth Division, Burnett Plaza, Suite 1700, 801 Cherry Street, Unit 4, Fort Worth, Texas 76102.

## IV. Factual Allegations

4. Plaintiff attended Quinsigamond Community College in Worcester, MA in 2007, Worcester State University in Worcester, MA from 2007-2008 and Husson University in Bangor, Maine from 2009 to 2013 during which time he applied for and received loans from Defendant.

5. Plaintiff received a Bachelor's Degree from Worcester State University.

6. Plaintiff received a Doctorate in Pharmacy from Husson University.

7. Plaintiff originally applied for and received loans (the "Loans") from multiple lenders to fund his education including the Department of Education.

8. The Loans, as originally made by Defendants, were made, insured, or guaranteed by a governmental unit.

9. Plaintiff used a portion of the funds borrowed from Defendants for costs relating to educational services.

10. However, the loans disbursed were far greater than the educational costs and Plaintiff used that overage for non-educational purposes including rent, food, and medications.

11. Plaintiff is solely responsible for the financial needs of his family of five.

12. Plaintiff is not currently married.

13. Plaintiff's 8-year-old dependent child is stricken with sickle cell disease, an inherited disease which causes red blood cells to be misshapen and break down. The early death of these cells causes a shortage of healthy red blood cells, causing potential blockages. The child experiences excruciating pain, increased infections, and severe fatigue. The disease is not curable, is life-long, and requires frequent medical treatments and constant care.[1]

14. Plaintiff misses significant work for the care of his child and has ongoing, extensive medical bills that will not abate.

---

[1] https://www.cdc.gov/ncbddd/sicklecell/facts.html; https://www.nhlbi.nih.gov/health/sickle-cell-disease; https://www.mayoclinic.org/diseases-conditions/sickle-cell-anemia/symptoms-causes/syc-20355876

NEELEY LAW

15. Plaintiff's student loan balances are approximately $164,977.01.

16. Plaintiff has additional private loans in the approximate amount of $18,689.38 that are not a part of this adversary proceeding.

17. Plaintiff faced significant financial hardships in the years leading to and following graduation. Debtor filed Chapter 7 bankruptcy in 2022 to obtain relief and to retain a more sustainable financial situation.

## V. CAUSES OF ACTION

### CLAIM NOT EXCEPTED FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(8)

18. Debtor repeats and re-alleges the allegations set forth in paragraphs 1 through 17 of this Complaint as set forth above.

19. 11 U.S.C. § 523(a)(8) provides, in relevant part, that:
    (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –
    …
    (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
       (A)
           (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
           (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
       (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

20. Sections 221(d)(1) and (d)(2) of the Internal Revenue Code provide, in pertinent part, that:

    **(1) Qualified education loan**
    The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses—
    **(A)** which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
    **(B)** which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
    **(C)** which are attributable to education furnished during a period during which the recipient was an eligible student.
    …
    **(2) Qualified higher education expenses**
    The term "qualified higher education expenses" means the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087ll, as in effect on the day before the date of the enactment

of the Taxpayer Relief Act of 1997) at an eligible educational institution, reduced by the sum of—
**(A)** the amount excluded from gross income under section 127, 135, 529, or 530 by reason of such expenses, and
**(B)** the amount of any scholarship, allowance, or payment described in section 25A(g)(2).
For purposes of the preceding sentence, the term "eligible educational institution" has the same meaning given such term by section 25A(f)(2), except that such term shall also include an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training.

21. Section 25A(f)(2) of the Internal Revenue Code provides, in pertinent part, that:
    **(f)(2) Eligible educational institution**
    The term "eligible educational institution" means an institution—
    **(A)** which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on the date of the enactment of this section, and
    **(B)** which is eligible to participate in a program under title IV of such Act.
    Emphasis added.

22. According to the Bankruptcy Appellate Panel ("BAP") in Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar) (B.A.P. 9th Cir., 2017):

    We have previously said that § 523(a)(8) excepts four types of educational claims from discharge: (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; and (4) any "qualified educational loan" as that term is defined in the Internal Revenue Code. Institute of Imaginal Studies v. Christoff (In re Christoff), 527 B.R. 624, 632 (9th Cir. BAP 2015) (quoting Benson v. Corbin (In re Corbin), 506 B.R. 287, 291 (Bankr. W.D. Wash. 2014)).

23. To the extent any portion of the Loans were not made, insured, or guaranteed by a governmental unit, or made under any program partially or fully funded by a governmental unit or nonprofit institution, such portion of the Loans are not excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(i).

24. Pursuant to the BAP in Kashikar, citing Christoff, although 11 U.S.C. § 523(a)(8)(A)(ii) requires that funds be received, it need not be the debtor who actually receives the funds, so long as cash is "advanced to **or on behalf of the debtor**." In re Kashikar, at p.10 (emphasis in original, quoting In re Christoff, at 634 n.9). In Kashikar, the BAP determined that the funds the school had received on the debtor's behalf constituted "funds received". However, the BAP disagreed with the lower court's determination that the loan constituted an "educational benefit". Id. at

p.11. The BAP, again referring to their prior decision in Christoff, looked to the changes to § 523(a)(8) in BAPCPA, wherein "Congress created a 'separate category delinked from the phrases 'educational benefit or loan' in § 523(a)(8)(A)(i) and 'any other educational loan' in § 523(a)(8)(B)." Id. at pp. 11-12 (quoting In re Christoff, 527 B.R. at 634). Ultimately the BAP held that a loan was not an "educational benefit" as contemplated by § 523(a)(8)(A)(ii). Id. at p. 12.

25. The Loans in the present case are not excepted from discharge pursuant to §523(a)(8) because they are not "(1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; [or] (4) [a] 'qualified educational loan' as that term is defined in the Internal Revenue Code." Id.

26. Defendant exceeded the necessary loan amounts given to Plaintiff for qualified educational purposes. Defendant overpaid the loans in the amount of $26,476.00. This overage did not provide any educational benefit to Plaintiff. In fact, Plaintiff used the loan overages for everyday living expenses including rent, groceries, and medical care for his family. The Consumer Financial Protection Bureau agrees that certain student loans are dischargeable in a bankruptcy, including the portion of funds higher than the cost of attendance. This is consistent with *McDaniel v. Navient Solutions*, No. 18-1445 (10th Cir. 2020) which provides "an educational loan did not constitute "an obligation to repay funds received as an educational benefit," within the meaning of 11 U.S.C. 523(a)(8)(A)(ii)." All of the funds used for any purpose other than education should, thereby, be dischargeable.

## UNDUE HARDSHIP UNDER 11 U.S.C. § 523(a)(8)

27. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 26 of this Complaint as set forth above.

28. Even if the Loans in the present case fall into one of the categories that Kashikar describes as excepted from discharge, the Debtor still qualifies for discharge because repaying the loans would be an "undue hardship."

29. The Code does not define "undue hardship", but the Fifth Circuit Court of Appeals has adopted a three-part test for analyzing whether not discharging a debt would pose an "undue hardship" on the debtor. In *In re Gerhardt*, 348 F.3d 89 (5th Cir. 2003), the court adopted the three-prong test for evaluating "undue hardship" claims established by the Second Circuit in Brunner v. New York State Higher Education Service Corp., 831 F.2d 395 (2d Cir. 1987). To justify the discharge of student loan debt under this test, a debtor must prove:

(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [herself] and [her] dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans. Gerhardt, 348 F.3d at 91 (quoting Brunner, 831 F.2d at 396).

**Minimal Standard of Living**

30. The first prong of the Brunner test requires that a debtor be unable to maintain a "minimal" standard of living if forced to repay the loans based on current income and expenses. The Plaintiff here has an average income with above average expenses. After necessary payroll deductions, Plaintiff takes home $3,476.53 on a biweekly basis. His living expenses are as follows:

    Rent: $2,111.00
    Utilities: $230.00
    Cell Phone (Sprint): $104.67
    Internet: $45.82
    Insurance (Medical): $229.99
    Insurance (Auto/Renter's): $157.33
    Food & Groceries: $550.00 (approximate)
    Gas/Vehicle Upkeep: $407.00
    Monthly Prescriptions: $127.77
    Primary Care and Specialists: $825.20
    ER and ICU Admittance: $2,385.07
    Additional Procedures and Medical Care Costs: $1,256.56

31. When deducted from Plaintiff's net pay, there is a deficit of $1,477.35 in the budget.

32. Plaintiffs' everyday expenses are moderate as set forth above. Plaintiff's expenses do not go above and beyond what is reasonable and necessary.

33. Plaintiff's medical expenses are extraordinary. When the child experiences a flare, the child requires hospitalizations and specialty treatments to manage further damage to the body and mitigate the severe pain. The cost to care for his child creates constant and overwhelming debt and unimaginable stress. There are no prospects for a reduction in expenses.

34. Plaintiff entered a chapter 7 bankruptcy in 2022. Plaintiff's circumstances have not improved and Plaintiff still struggles to meet his monthly bills. Thusly, the student loans preclude Debtor from maintaining a minimal standard of living. The first prong of the Brunner test is satisfied.

**Additional Circumstances Indicating Conditions Will Persist**

35. Under the second prong of the Brunner test, there must be additional circumstances that exist to indicate the state of affairs is going to persist for a significant portion of the repayment period of the student loans. Plaintiff's ability to increase his income is low. He cannot dedicate any more time to his job or secure any additional employment because of his significant responsibilities at home. Plaintiff is required to take multiple days off each month to care for his daughter which compromises his employability and his ability to progress in his current position.

36. It is far more likely Plaintiff's expenses will increase considerably in the future. The child is eight years old. Plaintiff's child's medical conditions are persistent and degenerative. Sickle cell disease causes developmental delays and slower than normal growth and development. [2] The chronic pain will increase and require additional treatment as the child grows. These increases in the severity and frequency of the child's disease will most likely inhibit Plaintiff's ability to work even further.

37. In combination, it is highly unlikely Plaintiff's hardship will resolve within the repayment period but will, in fact, remain for a prolonged and indeterminate period far beyond

---

[2] https://www.texaschildrens.org/health/delay-growth-and-puberty-children-sickle-cell-disease;
https://www.mayoclinic.org/diseases-conditions/sickle-cell-anemia/symptoms-causes/syc-20355876

the term of the loan. These circumstances create a certainty of hopelessness for Plaintiff. The second prong of the Brunner test is satisfied.

### Good Faith Effort to Repay

38. Under the third prong of the Brunner test, there must have been a good faith effort to repay the loans. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses," but the "debtor's failure to make a payment, standing alone, does not establish a lack of good faith." Mosley , 494 F.3d at 1327 (quoting ECMC v. Polleys (In re Polleys) , 356 F.3d 1302, 1311 (10th Cir. 2004) ), Graddy v. Educ. Credit Mgmt. Corp., 615 B.R. 336 (N.D. Ga. 2020).

39. Plaintiff's loans are in good standing which in itself shows a good faith effort. Plaintiff took advantage of programs available to him to minimize the cost of his education and the resulting loans including income- based repayment plans, forbearances, and deferments. This constitutes a good faith effort, and the third prong of Brunner is satisfied.

### CONCLUSION

1. Section 523(a)(8) does not strictly prohibit the discharge of student loans. It categorically allows for loans meeting specific criteria to be excepted. The Loans in this case are not protected from discharge. They are not qualified education loans, nor provided an educational benefit. Most importantly, the Plaintiff easily meets the standard of undue hardship, and the Loans should be discharged or significantly reduced on this ground.

//

//

//

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order:

A. Finding that the Loans are not excepted from discharge pursuant to 11 U.S.C. § 523(a)(8);

B. Finding that the Loans were discharged pursuant to 11 U.S.C. § 1328; and

C. Granting any other and further relief as the Court deems just and proper.

DATED: June 6, 2023                                **NEELEY LAW FIRM, PLC**

*/s Karen Bentley*
Karen G. Bentley
NEELEY LAW
*Attorneys for Plaintiff*

*/s Kyle Schumacher*
Kyle Schumacher
Josh Lane
Schumacher Lane PLLC
*Co-Counsel for Plaintiff*